# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2070

_____

Russell J. Yates,        *
         *
       Appellant,       *
         *    Appeal from the United States
    v.                 *    District Court for the
         *    Eastern District of Missouri.
McDonnell Douglas,      *
         *
       Appellee.        *

_____

Submitted: April 11, 2001

Filed: July 9, 2001

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and GOLDBERG,[1] Judge.

_____

WOLLMAN, Chief Judge.

Russell J. Yates appeals from the district court's[2] entry of summary judgment in favor of McDonnell Douglas Corporation (MDC) in this employment discrimination action. We affirm.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Yates, an African-American, was employed as an operator in MDC's St. Louis aircraft fabrication facility. He alleges that he was fired because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The facts underlying his claim are as follows.

Yates was fired on two occasions. In 1995, MDC terminated him for insubordination and unsatisfactory conduct when he allegedly refused to return to work after performing duties related to his position as a union shop steward. After a period of unpaid suspension, MDC permitted Yates to return to his position subject to a "Last and Final Warning Agreement" negotiated between the company and the union. Pursuant to the terms of the agreement, MDC retained the right to summarily fire Yates if he engaged in improper conduct similar to that precipitating his initial termination.

MDC fired Yates again, citing insubordination, unsatisfactory conduct, and "failure to comply," after an incident on May 24, 1996. MDC alleged that Yates failed to follow foreman Doug Engemann's instructions to begin work with a machine known as a Trumpf router after another machine malfunctioned. MDC also alleged that Yates challenged Engemann to a fistfight and referred to him as a "son of a bitch." Yates describes the events of May 24 differently. He contends that he did not immediately begin work on the Trumpf router because he was assisting a lower-grade worker operating another machine, as permitted by company and union policy. Additionally, although Yates admits telling Engemann that he was planning to file a grievance alleging racial discrimination, he denies challenging Engemann to a fight or using foul language.

Immediately after this incident, Engemann summoned John Huskey, a foreman supervising other employees, to the work area. Huskey recommended that Engemann contact his immediate supervisor, Bob Scott. When Scott arrived and was informed of

Yates's alleged insubordination, he summoned security and ordered that Yates be escorted off the premises. The matter was then forwarded to Chris Ross, superintendent of MDC's sheet metal center. Ross requested statements from Engemann, Huskey, and Scott regarding the events of May 24, and concluded that Yates had violated the terms of the 1995 Last and Final Agreement. On May 30, 1996, Ross determined that Yates should be fired, and his employment was subsequently terminated.

Yates's union thereafter filed a grievance with MDC alleging unjust termination. As provided by contract, the issue was submitted to arbitration, and the arbitrator upheld MDC's decision to terminate Yates. After obtaining a right to sue letter from the Equal Employment Opportunity Commission, Yates filed this lawsuit. The district court granted MDC's motion for summary judgment. On appeal, Yates contends that the court erred in concluding that he failed to produce direct evidence of discrimination.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court: whether the record, viewed in a light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Barrera v. Con Agra, Inc., 244 F.3d 663, 665 (8th Cir. 2001).

Yates alleges that Huskey harbors racial animus toward African-Americans in general and toward him in particular and that this racial bias infected MDC's 1996 decision to terminate his employment. In support of this contention, Yates produced statements of co-workers indicating that Huskey disliked Yates personally, that he had attempted to physically assault Yates on one occasion, that he used the word "nigger" to describe black people, and that he used similarly offensive language in direct reference to Yates. Although Yates concedes that Huskey did not make the final

decision to fire him, he describes Huskey as Engemann's "friend and mentor" and alleges that Huskey was closely involved in Engemann's decision to contact Scott and begin the formal disciplinary procedures that ultimately led to Yates's dismissal. Additionally, Yates argues that Ross's decision to request a statement from Huskey prior to firing Yates is further evidence that Huskey, and therefore Huskey's racial bias, influenced MDC's decision to terminate his employment.

We apply the mixed-motives analysis of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), to a claim of racial discrimination based on direct evidence. Under Price Waterhouse, once the plaintiff persuades a factfinder that, more likely than not, discrimination was "a motivating part in an employment decision," 490 U.S. at 258, the burden shifts to the employer to prove that the employment decision would nevertheless have been made for legitimate, non-discriminatory reasons. Id.; Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991). To be entitled to this direct-evidence analysis, however, Yates must present "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Rivers-Frison v. Southeast Mo. Comm. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) (citation omitted).

As the district court recognized, statements and actions such as those made by Huskey can, in some situations, serve as direct evidence of racial discrimination and accordingly trigger the Price Waterhouse analysis. In this case, however, Huskey was not sufficiently involved in the employment decision to qualify his comments as direct evidence of discrimination. Rivers-Frison, 133 F.3d at 619 (distinguishing between individuals closely involved in employment decisions and "nondecisionmakers"). Contrary to Yates's contention, in so holding we are not rejecting our rule that "[a]n employer cannot escape responsibility for [ ] discrimination . . ., when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor

-4-

force of [a protected class]." Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1323 (8th Cir. 1994) (quotations omitted). Rather, it cannot be said that Huskey was "closely involved in employment decisions," Beshears, 930 F.2d 1354; nor can we conclude that he "participated in the decisions" leading to Yates's termination. Stacks, 27 F.3d at 1323. It is undisputed that Ross made the decision to fire Yates after concluding that he had violated the terms of the 1995 Last and Final Warning Agreement. Huskey's only involvement was (1) recommending that Engemann contact Scott, his immediate supervisor, and (2) providing Chris Ross with a written statement of his recollection of the incident. We conclude that these facts are insufficient to establish that Huskey was closely involved in the decision to terminate Yates.

Moreover, even were we to find that Husky was closely involved in the employment decision, we would nevertheless affirm the district court's judgment. "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support" an inference of racial discrimination. Simmons v. Oce-U.S.A., Inc., 174 F.3d 913, 915 (8th Cir. 1999) (citation omitted). Direct evidence of racial discrimination is not established by mere "stray remarks in the workplace, statements by nondecision-makers, or statements by decision-makers unrelated to the decisional process itself." Beshears, 930 F.2d at 1354 (citation omitted). Huskey's offensive comments were made in 1994 or 1995, approximately one to two years prior to MDC's final decision to terminate Yates's employment. "Because the statements and the adverse employment decision were not close in time," Yates "must establish a causal link between the comments and his termination." Simmons, 174 F.3d at 916. Yates has failed to produce evidence suggesting causation. Huskey's alleged derogatory comments are therefore best classified as statements by a decisionmaker unrelated to the decisional process. See id.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.