# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3926

_____

| | |
|---|---|
| Cindy Mohr, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Dustrol, Inc., | * |
| | * |
| Appellee. | * |
| | * |

_____

Submitted: June 10, 2002
Filed: September 30, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Cindy Mohr appeals the district court's adverse grant of summary judgment in her Title VII action against her former employer, Dustrol, Inc. We affirm in part and reverse in part.

Dustrol is a paving maintenance company located in Lincoln, Nebraska. Mohr worked for Dustrol as a flagger on the seasonal heating crew in 1997 and 1998. The duties of a flagger involve controlling traffic in road construction zones by setting up and taking down traffic signs, signaling cars to stop or slow, and driving a lead vehicle through the work area. Although Mohr was occasionally reproached about her performance – e.g., driving too fast and not doing her share of the more tedious sign-holding work – she received raises on a regular basis and there is nothing to suggest that she was not considered, in general, a valuable employee. At some point after the start of the 1998 season, and thus after all hiring and assignment decisions had been made, a new foreman, Criz Sanchez, was assigned to the heating crew. According to Mohr, Sanchez made derogatory comments throughout the 1998 season about the few white workers on the crew and often said he wanted an all-Hispanic crew.

Mohr testified in her deposition that she expected to be called back for the 1999 season. When she hadn't heard from Dustrol by early spring, she called and spoke with Sanchez. According to Mohr, Sanchez told her she would not be on his crew that year because he was not going to have any females on his crew. Mohr nevertheless submitted a formal application on March 19, 1999, and placed the heating crew as her preferred assignment.

Dustrol's hiring and assignment decisions were officially made by Marc Heald and Harlan Baehr. Per their affidavits, they were aware that Sanchez did not want Mohr assigned to the heating crew for the 1999 season. They referenced Sanchez's reported problems with Mohr during the 1998 season – specifically that Mohr refused to do the more menial work of placing and removing signs (because, inter alia, she didn't want to "break her long (fake) fingernails") and wanted only to drive the flagger

truck. Heald's affidavit explicitly states that Sanchez "had requested that [Mohr] not be put on the heater crew again because of work performance problems he had with her."

Mohr was initially told there was no work available for her that season. In response, she filed a complaint with the Nebraska Equal Opportunity Commission (NEOC) alleging that Dustrol's failure to rehire her constituted race, national origin and gender discrimination. Around this same time, Dustrol called Mohr and offered her flagging work on the milling crew, a job Mohr considered a demotion because it offered less favorable hours and fewer opportunities for advancement to machine operation. Mohr took the position and started work on April 26, 1999. On May 18th, she quit. One month later, Mohr filed another complaint with the NEOC, alleging that Dustrol retaliated against her for her earlier filing. In this second charge, Mohr marked only "retaliation" as the basis for discrimination and left the boxes for race, sex and national origin unchecked.

On August 24, 2000, the NEOC issued a right to sue letter for each of the filings. Mohr's subsequent federal suit alleged discriminatory failure to hire, failure to train and constructive discharge. The district court granted summary judgment to Dustrol on all claims. On appeal, Mohr argues that genuine issues of material fact remain as to whether she was discriminated against in failing to be rehired for the heating crew and whether she was treated differently with respect to training. She also argues that the district court erred in resolving the failure to train claim on grounds not raised by Dustrol in its summary judgment motion.

II.

"We review a district court's grant of summary judgment de novo, giving the

nonmoving party the most favorable reading of the record." <u>Gentry v. Georgia-Pacific Corp.</u>, 250 F.3d 646, 649 (8th Cir. 2001). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When the evidence would support conflicting conclusions, summary judgment should be denied." <u>Kells v. Sinclair Buick-GMC Truck, Inc.</u>, 210 F.3d 827, 830 (8th Cir. 2000) (citation omitted).

A. Failure to Hire

Mohr's failure to hire claim alleges that Dustrol's decision not to rehire her for the 1999 heating crew was the result of sex, race and national origin discrimination. The district court found that Mohr applied too late to be considered for a position on the heating crew, and, therefore, she could not establish a prima facie case of discrimination.

The framework for evaluating a Title VII discrimination claim depends on the type of evidence presented in support of the claim. Where the plaintiff relies primarily on circumstantial evidence, courts apply a tripartite analysis as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under that test, the plaintiff must first establish a prima facie case of discrimination by showing that she was a member of a protected class and suffered an adverse employment action that others outside her class did not suffer. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000) (discussing burden-shifting framework established by <u>McDonnell Douglas</u> and progeny). The defendant may then offer legitimate, nondiscriminatory reasons for the challenged action. <u>Id.</u> (citing <u>Tex. Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981)). If the defendant meets this production burden,

the plaintiff must prove by the preponderance of the evidence that the nondiscriminatory reasons offered by the defendant are not true, and instead were pretext for discrimination. Id. at 143 (citations omitted). Significantly, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Burdine, 450 U.S. at 253).

In some situations, however, a plaintiff can produce direct evidence that an illegal criterion was a motivating factor in the disputed employment decision. See 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). In those cases, the plaintiff is relieved of the ultimate burden of persuasion and the so-called "mixed motive" analysis is applied. See generally Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Gagnon v. Sprint Corp., 284 F.3d 839, 847-49 (8th Cir.), petition for cert. filed, 71 U.S.L.W. 3162 (U.S. Aug. 19, 2002) (No. 02-273). Under the mixed motive analysis, "once the plaintiff persuades a factfinder that, more likely than not, discrimination was 'a motivating part in an employment decision,' the burden shifts to the employer to prove that the employment decision would nevertheless have been made for legitimate, non-discriminatory reasons." Yates v. McDonnell Douglas, 255 F.3d 546, 548 (8th Cir. 2001) (quoting Price Waterhouse, 490 U.S. at 254). Such a showing will preclude an award of damages although declaratory judgment, injunctive relief, and attorney's fees would still be possible. See 42 U.S.C. § 2000e-5(g)(2)(A) & (B); Gagnon, 284 F.3d at 847-48; Browning v. President Riverboat Casino-Missouri, 139 F.3d 631, 634 (8th Cir. 1998).

In this case, Mohr alleged that Sanchez made repeated derogatory comments about non-Hispanics throughout the 1998 season, and told Mohr directly that she

would not be on his crew in 1999 because he was going to have an all-male crew. The district court did not treat these comments as direct evidence of discrimination because it found "no evidence to indicate that [Sanchez] was 'closely involved in employment decisions.'" Mohr v. Dustrol, Inc., No. 4:00CV3280, slip op. at 7 (D. Neb. Sept. 6, 2001) (internal quotation omitted). Accordingly, the district court analyzed Mohr's claim under McDonnell Douglas. We disagree with the district court's characterization of the evidence and conclude that Sanchez's alleged remarks could reasonably be deemed direct evidence of discrimination for Title VII purposes.

"Direct evidence is that which demonstrates 'a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision' to take the adverse employment action." Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 436 (8th Cir. 1998) (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)). Not every prejudiced remark made at work supports an inference of discrimination. See Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring). Thus, "[w]e have carefully distinguished between 'comments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions,' from ''stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.''" Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) (internal quotations omitted); see also Kriss v. Sprint Communications Co., 58 F.3d 1276, 1282 (8th Cir. 1995) (requiring evidence of "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to find that that attitude was more likely than not a motivating factor in the employer's decision").

It is undisputed that Heald and Baehr were the Dustrol employees officially responsible for hiring and crew assignments. However, the direct evidence inquiry is not limited to those formally entrusted with decisionmaking duties. If a reasonable factfinder could conclude that Sanchez was closely involved in the decision not to rehire Mohr for the heating crew, then his alleged comments are relevant to the direct evidence analysis. While Dustrol states that Sanchez does not make hiring decisions, excerpts from both Heald's and Baehr's affidavits attest to Sanchez's input where Mohr was concerned:

> Beahr affidavit, ¶ 14: Criz Sanchez had problems with Cindy [Mohr] when she worked on his crew. Criz was not interested in having her come back on his crew in 1999. Criz wanted Cindy to set up signs and she either refused or just wanted to drive the pickup.

> Heald affidavit, ¶ 5: Cindy [Mohr] came in on March 19, 1999 to apply to work for the 1999 construction season. She started work on April 26, 1999. She did not begin to work earlier than April 26 because Dustrol did not have work for her before then. She again put on her application that she wanted to be a heater crew flagger. However, she was not put on the heater crew. Criz had requested that she not be put on the heater crew again because of work performance problems he had with her.

> Heald affidavit, ¶ 6: Criz did not want her back on his crew because [Mohr] only wanted to drive the truck back and forth between the flaggers. She did not want to get out of the truck. She did not want to put out or pick up signs because she did not want to break her long (fake) fingernails.

These excerpts support a finding that Sanchez played a pivotal role in Mohr's treatment by Dustrol. A reasonable inference arises that Mohr was not initially hired in March because Sanchez did not want her on the heating crew and there was no other

work available. Indeed, Heald's and Baehr's statements leave little room for any other conclusion than that they deferred to Sanchez in making employment decisions regarding Mohr. See Gagnon, 284 F.3d at 848 ("Courts look beyond the moment a decision was made in order to determine whether statements or comments made by other managerial employees played a role in the ultimate decisionmaking process."). Given this, Dustrol cannot assert Heald's and Baehr's lack of knowledge regarding Sanchez's alleged discriminatory animus to dispositively insulate itself from liability. See id. at 848-49 (reversing summary judgment to employer after finding direct evidence of discrimination, and concluding, "While [the COO's] decision may have ultimately been free of any discriminatory animus, we cannot sterilize a seemingly objective decision when earlier discriminatory decisions lead to the adverse employment action."); Yates, 255 F.3d at 549 (reaffirming rule set forth in Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1323 (8th Cir. 1994), that "[a]n employer cannot escape responsibility for [] discrimination . . . when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of [a protected class]"); Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1057 (8th Cir. 1993) (discussing cases from other circuits for same proposition). Thus, for purposes of summary judgment review, Sanchez's involvement in the decisionmaking process and his alleged derogatory comments about the workplace capabilities of women and non-Hispanics sufficiently establish the "specific link" between the challenged employment action and the alleged animus.

Having concluded that Mohr is entitled to the mixed motive analysis, our review turns to whether Dustrol has proven that absent consideration of any illegal criterion it would have taken the same employment action.[1] In other words, Dustrol

---

[1] We again note that even if Dustrol is successful at making such a showing, it is still potentially liable for declaratory relief, injunctive relief, attorneys fees and costs. See 42 U.S.C. § 2000e-5(g)(2). "Whether or not [the employer] satisfies its burden to show by a preponderance that it would have reached the same employment

must show that no genuine issue remains as to its nondiscriminatory reason for failing to rehire Mohr for the heating crew when she applied in March 1999. Dustrol's position is set out in Baehr's affidavit, at paragraph seven, in which he states: "All of the flaggers hired <u>prior</u> to Mohr in 1999 had completed their application forms <u>prior</u> to the date Mohr submitted her application. No flagger was hired by Dustrol <u>before</u> Mohr, who had applied after Mohr." (emphasis in original).

Dustrol asks us to read these statements as conclusive proof that its decisions regarding Mohr were based solely on timing, a completely objective criterion. First, we note that Mohr has raised a factual question as to whether the formal application process was a prerequisite to placement in her case. Mohr's deposition testimony suggests that she expected Dustrol to contact her for seasonal work as it had done in prior years. <u>See</u> <u>Gentry</u>, 250 F.3d at 652 (stating failure to formally apply will not be deemed fatal to discrimination claim where job opening was not officially advertised and employer was aware of plaintiff's interest). We need not determine whether Mohr's showing on this point rises to the level of a genuine issue, however, because Heald's statements, in and of themselves, are insufficient at summary judgment to prove Dustrol would have made the same employment decisions regarding Mohr absent Sanchez's involvement.

Heald's statements do not mandate a finding that all of the positions on the heating crew were *filled* prior to Mohr's application and Dustrol has offered no evidence to that effect. Nor has Dustrol presented evidence of a "first-come first-hired" policy. Instead, there is merely the assertion that "no flagger was hired by Dustrol before Mohr who had applied after Mohr." Absent more, this language is

decision absent any discrimination is only relevant to determine whether the court may award full relief including damages, court ordered admissions, reinstatement, hiring, promotion or other such relief." <u>Gagnon</u>, 284 F.3d at 848 (citations omitted).

insufficient to prove as a matter of law that Mohr's application was treated with complete neutrality. And when viewed in conjunction with Sanchez's documented criticisms of Mohr's abilities, there is a reasonable inference that factors other than timing affected the decisionmaking process. In short, taken as a whole and granting Mohr all reasonable inferences, the record belies Dustrol's assertion that Mohr simply applied too late for consideration on the heating crew. Accordingly, summary judgment on the failure to hire claim is inappropriate. See Johnson v. Minn. Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991) ("All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party [before summary judgment is appropriate].").

B. Failure to Train

Mohr's failure to train claim alleges that throughout her employment with Dustrol she was not given the same training opportunities as male employees. Mohr asserts that, despite her repeated requests, only male employees were taught to operate the pavement heaters and other large machines. She also claims that, unlike the male employees, she was not allowed time at work to study for her commercial drivers license, which would have facilitated advancement. The district court found that Mohr's allegations could support a prima facie case of sex discrimination, but granted summary judgment because Mohr had failed to exhaust her administrative remedies with regard to such a claim. Mohr argues that the district court was not at liberty to grant summary judgment on this basis since Dustrol had not raised the administrative exhaustion issue in its summary judgment motion. Mohr further argues that the district court's decision was substantively wrong.

Mohr is correct that a district court may not grant summary judgment sua sponte unless the nonmovant has been notified and given an opportunity to respond.

See Am. Red Cross v. Community Blood Ctr., 257 F.3d 859, 863 (8th Cir. 2001); Walker v. Mo. Dep't of Corrections, 138 F.3d 740, 741-42 (8th Cir. 1998); Williams v. City of St. Louis, 783 F.2d 114, 116-17 (8th Cir. 1986). A close reading of these cases, however, reveals that this general rule is largely inapposite here. Each of the cases cited by Mohr involves a reversal of summary judgment where the district court made a determination on the merits of a claim, or element of a claim, not raised or addressed by either party. Thus, in Walker the employer moved for summary judgment on Walker's ADA claim solely on the grounds that the plaintiff was not a "qualified individual with a disability" under the ADA. Walker, 138 F.3d at 741. The district court, however, based its ruling in the employer's favor on a different element – that the plaintiff could not show an adverse employment action. Id. at 741-42. This was deemed reversible error since the plaintiff "did not have sufficient notice that the third element was in issue." Id. at 742. Similarly, in American Red Cross, we reversed the district court's summary judgment disposition of three tortious interference claims because the moving party had not addressed those particular claims in its summary judgment motion. Am. Red Cross, 257 F.3d at 862-63. Finally, in Williams, which involved two co-defendants, the district court granted summary judgment in favor of both defendants even though only one had moved for it. Williams, 783 F.2d at 115. We reversed, holding that strict compliance with Federal Rule of Civil Procedure 56 would not permit what was, technically, a sua sponte summary judgment ruling in favor of the non-moving co-defendant. Id. at 116.

We find it significant that in this case the district court did not reach the merits of Mohr's Title VII failure to train claim. Rather, the district court reviewed only whether Mohr had exhausted her administrative remedies with regard to such a claim. It is well-settled that exhaustion of administrative remedies is a jurisdictional prerequisite to a private civil action under Title VII, and that the proper reach of a Title VII claim is a legal issue. See 42 U.S.C. § 2000e-5(e); McDonnell Douglas Corp., 411 U.S. at 798 (describing "jurisdictional prerequisites to a federal action" as

-11-

including receipt by plaintiff of Commission's statutory notice of the right to sue); Ross v. Douglas County, Neb., 234 F.3d 391, 395 (8th Cir. 2000) (noting Title VII's "mandatory exhaustion requirement whereby claims must first be presented to the NEOC before a plaintiff can sue in Federal Court"). See also Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998) (characterizing determination of scope of Title VII claim as a legal issue). Although challenges to the scope of a Title VII claim frequently arise at the summary judgment stage, we have never held that the issue may only be addressed through Rule 56. To so hold would undermine the purpose of Title VII's administrative remedies provision which is "to provide the Commission an opportunity to investigate and attempt a resolution of the controversy through conciliation before permitting the aggrieved party to pursue a lawsuit." Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (citations omitted); see also Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) (reiterating that "exhaustion of administrative remedies is central to Title VII's statutory scheme" (citations omitted)). Moreover, it would lead to the anomalous result that Title VII's mandatory exhaustion requirement would be enforced only where invoked by a private litigant.

We recognize that whether a plaintiff has exhausted administrative remedies with regard to a particular Title VII claim may, at times, involve a relatively fact-intensive analysis, and we recommend that, in those cases, district courts provide plaintiffs with an opportunity to address the issue prior to ruling on it. We make no strict requirement to that effect, however, and conclude that, in this case, the facts relevant to the exhaustion determination were fully set forth in the pleadings and attendant NEOC documents.

In a recent case, we summarized the standard for determining whether a plaintiff has properly exhausted administrative remedies prior to suit:

"In determining whether an alleged discriminatory act falls within the scope of a [discrimination] claim, the administrative complaint must be construed liberally 'in order not to frustrate the remedial purposes of [the anti-discrimination statutes]' and the plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Nichols 154 F.3d at 886-87 (citations and internal citation omitted). "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (citation omitted). Allegations outside the scope of the EEOC charge, however, circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (citation omitted).

Kells, 210 F.3d at 836.

After de novo review, and viewing all facts in the light most favorable to Mohr, we agree with the district court that Mohr's failure to train claim was not administratively exhausted. See Nichols, 154 F.3d at 886 (stating standard of review). Mohr's claim is clearly outside the scope of her first administrative complaint which challenges only Dustrol's failure to rehire her for the 1999 season. A failure to train is not the type of treatment that is like or reasonably related to an administrative charge of discriminatory failure to hire. A failure to hire is a discrete act of discrimination, particularly in this case where Mohr's NEOC charge alleged that the discriminatory actions occurred between March 29 and April 2, 2000. An investigation into such a charge would not encompass unalleged, ongoing disparate training claims. And, as would be expected, the Commission's findings in this case make clear that its investigation was limited to the circumstances surrounding the failure to hire allegation. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 672 (8th Cir. 1994) (affirming the dismissal of an unexhausted racial harassment claim and

-13-

finding it relevant that "a discharge is a completed act at the time it occurs" whereas a claim of racial harassment focuses on pervasiveness of the racially discriminatory conduct).

Mohr's second NEOC charge, filed two months later, includes a failure to train allegation but asserts only retaliation as the basis for the disparate treatment. There is nothing in the complaint that would advise the Commission of any other asserted bases for discrimination. To the contrary, the complaint is highly specific and narrowly circumscribed, emphasizing that the alleged discriminatory treatment occurred between April 26 and May 18, 1999, and was in retaliation for Mohr's earlier filing with the NEOC. The substantive allegations are, for the most part, completely neutral regarding sex, race and national origin. Nothing suggests that Mohr believed discrimination on those grounds, rather than retaliation, was driving the disparate treatment complained of in the second charge.

Mohr argues that the two charges should be construed together for purposes of administrative exhaustion. In other words, the substantive allegations in the second NEOC charge should be read in conjunction with the asserted bases of discrimination in the first NEOC charge so that she has properly exhausted a claim for discriminatory failure to train based on sex, race and national origin. We rejected a similar argument in Williams v. Little Rock Municipal Water Works, 21 F.3d 218 (8th Cir. 1994). In that case, the plaintiff contended that her 1990 retaliation charge was linked to a 1987 race discrimination charge and thus the Title VII race discrimination claims brought in 1990 were properly exhausted. See id. at 222. She argued that the district court's dismissal of her discrimination claims resulted from a crabbed and technically precise reading of her administrative complaint. See id. at 223. Our discussion in that case applies equally here:

> Williams' claims of race discrimination are separate and distinct from her claims of retaliation. Not only did Williams fail to check the box for race discrimination, her 1990 EEOC charge and supporting affidavit specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987. The 1990 EEOC charge does not even hint of a claim of race discrimination. This amounts to more than a mere technicality and is the product of an unconstrained reading of Williams' charge. The only claim properly addressed by the EEOC administrative processes was that of retaliation.

Id.

We agree with the district court that, in all significant respects, Mohr's case is analogous to <u>Williams</u>. Although Mohr's two NEOC filings were closer in time, the second filing unambiguously directed the Commission to investigate retaliation charges only, and its specificity, following so closely on the heels of the first filing, acted to further distinguish and isolate the substantive allegations within each of the complaints. <u>See</u> <u>Shannon</u>, 72 F.3d at 685 (discussing <u>Williams</u> and agreeing that mere reference to previous discrimination charge in subsequent retaliation charge "was not enough to exhaust, for Title VII purposes, the discrimination claim").

We note that even if we took Mohr's broad view and construed the charges jointly, we would still conclude that her Title VII failure to train claim exceeded the scope of her NEOC charge. The gist of Mohr's Title VII claim is that over the course of her three seasons with Dustrol she was denied the same training opportunities as male employees. Her NEOC charges involved only a brief period in 1999, and the Commission's findings make clear that its investigations covered only this limited period. To allow Mohr to bring a failure to train claim in this case would improperly circumscribe the NEOC's investigatory and conciliatory role and deprive Dustrol of notice of the charge. <u>See</u> <u>Williams</u>, 21 F.3d at 222-23. <u>See also</u> <u>Shannon</u>, 72 F.3d at

-15-

685 ("[T]here is a difference between liberally reading a claim which 'lacks specificity,' and inventing, ex nihilo, a claim which simply was not made.") (internal citation omitted).

## III.

For the reasons discussed herein, we reverse the district court's grant of summary judgment on Mohr's failure to rehire claim, and affirm the dismissal of her failure to train claim. The case is remanded for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

I agree with the result reached by the district court. Accordingly, I respectfully dissent from the reversal of the failure to hire claim asserted by Ms. Mohr.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.