Amber **WALKER**, Plaintiff,

v.

**FRED NESBIT DISTRIBUTING, CO.,** Defendant.

No. 4:03–CV–90115.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 12, 2004.

---

782

Charles E. Gribble, Joann Stone, Parrish Kruidenier Moss Dunn Boles Gribble & Cook LLP, Des Moines, IA, for Plaintiff.

William W. Graham, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Amber Walker, brings this action against her previous employer, Defendant, Fred Nesbit Distributing Company ("Nesbit"), alleging violations of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) and 2000 e–2, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2 and 2000e–3, and the Iowa Civil Rights Act, Iowa Code Chapter 216 (ICRA). Presently before the Court is Defendant's Motion for Summary Judgment. The motion has been briefed by the parties and the matter is fully submitted.

For the reasons discussed below, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

In May of 2000, Amber Walker began employment at Nesbit and, by November of that year she became the only female truck driver at Nesbit. As a truck driver, Walker's duties included: delivering products; rotating back stock; stocking shelves; building and maintaining displays; and picking up old or close dated and damaged products. Also in her job description was a heavy lifting requirement, defined by Nesbit as more than fifty pounds.

In January of 2002, Walker became pregnant and notified her supervisor Jerry Braatz. On April 17, 2002, Plaintiff met with Art Sween, Nesbit's Human Resource Director and Comptroller, to discuss her pregnancy. During this meeting, Walker claims that she requested either to be reassigned to light duty work or to be accommodated by providing someone to perform her heavy lifting duties while still allowing her to drive the truck. Sween denied Walker's request, citing a recent company policy change. The policy change, as stated by Defendant, restricts the availability of light duty work to employees who are injured on the job. Nesbit claims. the new policy resulted from professional insurance advice that light duty be made available to workers' compensation claimants in order to hold down the costs associated with those claims. This new policy, however, never appeared in the employee handbook, and Plaintiff asserts she was never in any way notified of the policy change.

Once Sween had denied Walker's request for a light duty assignment, he informed her that per company policy, she would be provided with twelve weeks of

Family and Medical Leave Act, 29 U.S.C. 2611 *et seq.* (FMLA) leave. According to Plaintiff, Sween explained that if she did not return to Nesbit when her leave expired, she "would" be terminated. Defendant disputes this contention and states that both Sween and the employee handbook respectively explain that Walker "could" or "may" be terminated if she did not return to Nesbit.

On April 24, 2002, Walker produced a physician's work restriction requiring her to limit her lifting to less than twenty pounds and work no more than eight hours per day, forty hours per week. At this time, Walker informed Sween that the twelve-week FMLA leave would not cover the full term of her pregnancy. Defendant then offered Walker an additional six weeks unpaid leave to cover the full term of her pregnancy. Sometime after the meeting, Sween presented Walker with a written agreement documenting the standard twelve weeks of FMLA leave and the six-week extension of unpaid leave, but Walker never signed or returned the document. Nevertheless, Defendant stands by the total eighteen weeks of leave it granted.

Walker began her FMLA leave on April 23, 2002, and her child was born on August 21, 2002. Twelve weeks of FMLA ended on July 16, 2002, and the six additional weeks of unpaid leave ended on August 27, 2002, six days after delivery. On August 29, 2002, two days after the end of her specified leave, Walker was terminated for failing to return to work.

## II. SUMMARY JUDGMENT

 Rule 1 of the Federal Rules of Civil Procedure states that all Rules, including Rule 56, "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Summary judgment, however, is not a paper trial. "The district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10 *Wright, Miller & Kane* § 2712, at 574–78. The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921.

 As employment actions are inherently fact based, the Eighth Circuit has repeatedly cautioned that summary judgment should "seldom be granted ... unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998) (citations omitted). *See also Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)), ("summary judgment should seldom be used in employment discrimination cases"); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). This is because "inferences are often the basis of the claim ... and 'summary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." *Breeding v. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999) (quoting *Lynn v. Deaconess Med. Ctr.-West Campus,* 160 F.3d 484, 486–87 (8th Cir.1998)). Nevertheless, the Eighth Circuit has still affirmed summary judgement

in employment-discrimination cases, while also holding to the *Runyon* principle. As Judge Richard Arnold states in his dissent in *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir.2004). "Some cases just shouldn't be litigated. But, I still believe there is merit to the *Runyon* principle."

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995)). Fed.R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994); *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publ'g v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp.* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c),(e); *Celo-*

*tex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Lastly, in considering a motion for summary judgment, the Court neither weighs the evidence, nor does it make credibility determinations. *See Anderson, id.* at 252, 106 S.Ct. 2505. Rather, the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

### III. ANALYSIS

Walker charges that Nesbit illegally discriminated against her on the basis of her pregnancy status and sex, in violation of Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and the Iowa Civil Rights Act, Iowa Code Chapter 216 (ICRA). Walker additionally claims that Nesbit retaliated against her once she filed her pregnancy discrimination complaint with the Iowa Civil Rights Commission (ICRC) and the United States Equal Employment Opportunity Commission (EEOC), in violation of Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e–3 and ICRA § 216.11.

Federal case law supplies the basic framework for deciding cases under the ICRA. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1380 (8th Cir.1996) (citing *Iowa State Fairgrounds Sec. v. Iowa Civil*

*Rights Comm'n,* 322 N.W.2d 293, 296 (1982)). Iowa courts "traditionally turn to federal law for guidance on evaluating the ICRA, but federal law ... is not controlling." *Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) (citations omitted). Walker does not offer any separate legal arguments for her ICRA claims. The Court, therefore, will address Walker's federal and state law claims of retaliation and pregnancy and sex discrimination together.

## A. Title VII Standard

The analytical framework for discrimination claims under Title VII has been the subject of debate within the federal courts of late. Until recently, Courts have used two separate frameworks to determine whether a plaintiff was subject to discrimination. The distinction between the two analyses depends on whether a plaintiff presents direct evidence of the alleged discrimination, thereby warranting a "mixed motive" theory of analysis as explained in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or indirect or circumstantial evidence of the alleged discrimination which requires a "burden-shifting" framework of analysis under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If a plaintiff produces direct evidence of the alleged discrimination, the plaintiff must persuade the factfinder under the "mixed motive" theory of analysis. The plaintiff must persuade the factfinder that, more likely than not, discrimination was "a motivating part in an employment decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 254, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The burden then "shifts to the employer to prove that the employment decision would nevertheless have been made for legitimate, nondiscriminatory reasons." *Yates v. McDonnell Douglas,* 255 F.3d 546, 548 (8th Cir.2001). Direct evidence of discrimination has been defined by the Eighth Circuit as "evidence or conduct or statements by persons involved in the decision-making process that is sufficient for the factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employers' decision." *Kerns v. Capital Graphics, Inc.* 178 F.3d 1011, 1017 (8th Cir.1999). The Eighth Circuit goes on to state that "such evidence might include proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to women being in the workplace at all." *Id.*

If the plaintiff only offers circumstantial or indirect evidence of illegal discriminatory conduct by the defendant, the Court employs the *McDonnell Douglas* burden-shifting analysis. *Ottman v. City of Independence,* 341 F.3d 751 (8th Cir.2003). Under this three-part framework, Plaintiff must first establish a prima facie case by proving: "(1) that she belonged to a protected class, (2) that she was qualified to receive the benefit ... [at issue], (3) that she was denied the benefit, (4) and that the same benefit was available to others with similar qualifications." *Lang v. Star Herald,* 107 F.3d 1308, 1311 (8th Cir.1997). If the plaintiff meets her burden of establishing a prima facie case of discrimination, the burden then shifts to the defendant to show legitimate nondiscriminatory reasons for the adverse action. *Id.* Upon such a showing, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered nondiscriminatory reasons are merely a pretext for discrimination. *Id.* Under this burden-shifting analysis, a plaintiff at all times bears the ultimate burden of persuading the trier of fact that "the defendant intentionally discriminated against the plaintiff." *Tex. Dep't of Cmt. Affairs*

*v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■■■ Plaintiff urges that the use of a *McDonnell Douglas* analysis is incorrect because not only is direct evidence of discrimination provided, but also because the recent Supreme Court decision *Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), extinguishes the distinction between direct and circumstantial evidence for discrimination analyses. The limited holding of *Desert Palace* states that a plaintiff need not present direct evidence in order to receive a mixed motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *Desert Palace,* 539 U.S. at 92, 123 S.Ct. 2148. The Supreme Court reasoned that "circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id.* at 94, 123 S.Ct. 2148. (internal citations omitted). The Court, however, declined to address the effect of this holding on *McDonnell Douglas.*

The effect that *Desert Palace* may have on the analysis of discriminatory conduct continues to be the subject of debate in the federal courts. The Eighth Circuit has declined to put forward an express opinion on the effect *Desert Palace* may have on the *McDonnell Douglas* analysis. *See Allen v. City of Pocahontas, Ark.,* 340 F.3d 551, 558 (8th Cir.2003) (finding no need to reach the issue of whether *Desert Palace* altered the burden-shifting framework of *McDonnell Douglas* because the result remains the same where plaintiff presents insufficient evidence, direct or circumstantial); *Trammel v. Simmons First Bank of Searcy,* 345 F.3d 611, 615 (8th Cir.2003) (declining to decide if the holding in *Desert Palace* applies to age discrimination claims against an employer because plaintiff presented insufficient evidence that age was

motivating factor in the employer's decision to terminate).

It is not vital for this Court to determine the effect that *Desert Palace* may or may not have on the analysis of discriminatory conduct in this case. Walker does not present any argument that the *McDonnell Douglas* analysis should be eliminated. Rather, Plaintiff's resistance to Defendant's motion applies the burden-shifting framework of *McDonnell Douglas.*

### B. Pregnancy and Sex Discrimination

Even though Plaintiff argues that there is direct evidence of discrimination by way of her claim that Sween told her the truck driving position was a "man's job," she proceeds under a *McDonnell Douglas* analysis unaffected by *Desert Palace.* The Court will do the same.

Proceeding forward with the *McDonnell Douglas* analysis, Walker must first establish her prima facie case. Plaintiff and Defendant agree that Walker meets the first and third elements of the prima facie case as Plaintiff belongs to a protected class by virtue of her pregnancy, and she suffered an adverse employment action when Nesbit terminated her employment.

■■■ Dispute arises with the second and forth elements of Walker's prima facie case. In pregnancy discrimination cases, the proper definition of the second element of the prima facie case is not that the plaintiff must be qualified to perform her job, as Defendant states, but rather, that plaintiff must prove she was qualified to receive the benefit at issue. *See Lang,* 107 F.3d at 1311. The Court agrees with Plaintiff that the benefit at issue here was the opportunity to be assigned a light duty position, not to retain her truck driving position as Defendant argues. Both parties agree that the Plaintiff requested a light duty reassignment and that Defendant denied this request. Thus, the Plain-

tiff has established the second element of her prima facie case.

■■■ For the fourth and final element of Walker's prima facie case, Nesbit claims that Walker cannot prove "the same benefit was available to others with similar qualifications." *Id.* Nesbit claims that after the policy change of September 2001, it only offered modified work duties to employees who suffered on the job injuries. Plaintiff notes, however, that Defendant assigned light duty to driver Steve Starmer after he broke his foot by falling off the front deck of his mother-in-law's house. Doctor's orders required that he stop work until September 24, 2001. On that date, he was allowed to return to work under doctor-restricted lifting duties stating that he was not to lift anything more than twenty-five pounds. Evidence suggests that until late October of 2001, Nesbit accommodated Starmer by providing an additional employee to perform heavy lifting duties while Starmer drove his route. Plaintiff presents additional evidence that two other truck drivers were provided with light duty assignments for non-work related injuries. The Court, taking this evidence in the light most favorable to the Plaintiff, finds that she has met her burden of establishing a prima facie case of pregnancy and sex discrimination. *See Adams,* 962 F.2d at 794 (plaintiff police officer was discriminated against on the basis of her pregnancy status and sex when other non-pregnant co-workers were offered light duty positions).

As Plaintiff has established her prima facie case of discrimination, the burden now shifts to Defendant to provide a legitimate nondiscriminatory reason for denying Walker a light duty position. Nesbit cites the September 2001 policy change, reserving light duty assignments for work related injuries, as the sole reason for denying Walker a light duty position. Although Defendant claims the policy was put into place in September of 2001, Plaintiff states she was never informed of such a policy change. Other Nesbit's employees, however, testify that they had such knowledge. Plaintiff and Defendant agree that there is no written documentation of the light duty policy change. Yet, some time after September 2001, Nesbit made another policy change regarding drivers facing Operating While Intoxicated (OWI) charges, which was provided to employees in written form. In any event, Defendant has met its burden to put forth a legitimate nondiscriminatory reason for denying Walker a light duty position.

■■■] As Defendant has provided a legitimate nondiscriminatory reason for denying Walker a light duty position, Plaintiff must prove by a preponderance of the evidence that the September 2001 policy change is a mere pretext for Defendant's discriminatory behavior. *Adams,* 962 F.2d at 795. To meet her burden, Plaintiff presents evidence questioning the validity of the September 2001 light duty policy change. Walker states that not only was the September 2001 policy change never a written policy, but also that she was never made aware of the change. Walker further asserts that the policy was not followed by Defendant because other Nesbit truck drivers were given accommodations when circumstances arose, such as off the job injury and OWI charges, that impeded the drivers' ability to fulfill their duties. It is clear that the evidence surrounding the 2001 light duty policy change, taken in the light most favorable to the Plaintiff, presents a question of fact for the jury to decide. Therefore, Nesbit's motion for summary judgment on the pregnancy and sex discrimination claims is denied.

## C. Retaliation

■■■ Plaintiff next claims that Defendant's termination of her employment was

in retaliation for her filing complaints with the Iowa Civil Rights Commission (ICRC) and the United States Equal Employment Opportunity (EEOC). In order to establish a claim of retaliation, a plaintiff must first present a prima facie case that: 1) she was engaged in statutorily protected conduct; 2) she suffered adverse employment action; and 3) a causal connection existed between the adverse action and the protected conduct. *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997); *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989).

■ Both parties agree that Walker filed her complaint with the ICRC and the EEOC on May 28, 2002 and that Walker was fired from her position at Nesbit on August 29, 2002. Plaintiff, however, does not present any direct evidence of retaliation by the Defendant. Direct evidence is that which demonstrates "a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision." *Deneen v. Northwest Airlines*, 132 F.3d 431, 436 (8th Cir.1998) (citing *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)) (internal quotations omitted).

Rather, Plaintiff relies solely on the temporal proximity between filing her complaint and termination as proof of causation of any retaliatory conduct performed by Nesbit. The Eighth Circuit has "discounted, albeit with qualification, the possibility that mere temporal proximity between protected act and adverse employment action can establish necessary causal connection: 'generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'" *Smith v. Allen Health Systems*, 302 F.3d 827, 832 (8th Cir.2002) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc* )). Further, "a mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge." *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir.2000). A plaintiff "must do more than point to the temporal connection between the filing of her ... complaint and ... [defendant's] allegedly adverse actions." *Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir.2000).

■ In order for mere temporal proximity to be accepted as causation, the temporal proximity "must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). As well, a jury must be able to reasonably conclude that the statutorily protected activity and the adverse employment action are causally connected. *See Bainbridge*, at 761. Here, the three month period between when Walker filed a complaint and her ultimate termination does not provide any evidence of causation. Add to this the fact that Walker knew she would face termination if she did not return to work at the end of her leave, and Plaintiff's prima facie case must fail. As such, Defendant's motion for summary judgment on the claim of retaliation is granted.

## D. Disabled via Pregnancy

■ Walker also claims discrimination under Iowa Code § 216.6(2)(d), which provides that "an employer shall not terminate the employment of a person disabled by pregnancy because of the employee's pregnancy." Recalling that Iowa courts "traditionally turn to federal law for guidance on evaluating the ICRA." *Vivian*, 601 N.W.2d at 873 (citations omitted) the Court will proceed with guidance from the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (ADA) and related case

law. Pregnancy per se is not a disability. *See Navarro–Pomares v. Pfizer Corp.*, 97 F.Supp.2d 208, 212 (D.P.R.2000) (noting that no court now maintains that pregnancy per se is a disability under the ADA), *rev'd on other grounds, Navarro v. Pfizer Corp.*, 261 F.3d 90 (1st Cir.2001). Any discussion of pregnancy constituting a disability under the ADA is almost exclusively concerned with the magnitude of the symptoms experienced by the mother, outside typical pregnancy complications. *See Gudenkauf v. Stauffer Communs., Inc.*, 922 F.Supp. 465, 474 (D.Kan.1996) (finding that normal pregnancy complications do not constitute a disability as defined by the ADA); *Minott v. Port Auth. of N.Y. & N.J.*, 116 F.Supp.2d 513, 525 (S.D.N.Y. 2000) (stating that only in "extremely rare circumstances will complications arising from pregnancy constitute a disability under the ADA" and finding that plaintiff's miscarriage does not constitute a disability) *Minott*, 116 F.Supp.2d at 525; *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F.Supp. 213, 227 (S.D.N.Y.1997) (holding that to qualify as a disability a pregnancy-related complication must be substantial). Here, Walker presents no evidence that her pregnancy was anything but routine.

Moreover, the "Iowa Supreme Court treats pregnancy discrimination claims as gender discrimination claims, not disability claims." *Wallace v. Osceola Foods, Inc.*, No.4–98–cv–80563, 2000 U.S. Dist. LEXIS 22249, at 6* (S.D.Iowa 2000). *See Quaker Oats v. Cedar Rapids Human Rights Cmm'n.*, 268 N.W.2d 862, 864 (Iowa 1978). Walker's claims of discrimination, therefore, are pregnancy and sex related, but she cannot rely on her pregnancy to establish a disability claim. As such, Defendant's motion for summary judgement on Plaintiff's claim of disability discrimination is granted.

## E. Insufficient Leave Provided for Pregnancy

] Walker claims that she did not receive adequate leave for her pregnancy as required by Iowa law. Pursuant to Iowa Code § 216.6(2)(e), an employer cannot refuse to grant a leave of absence if it "is for the period that the employee is disabled because of the employee's pregnancy, childbirth, or related medical conditions, or for eight weeks, whichever is less." Walker admits Nesbit provided her with twelve weeks of FMLA leave and an additional six weeks of unpaid leave in order for her to have her baby. As such, Walker is not able to claim that she had no knowledge of the pregnancy leave made available to her. Plaintiff was provided with eighteen weeks of unpaid leave, well beyond the eight weeks of unpaid leave required by Iowa Code § 216.6(2)(e). For this reason, Defendant's motion for summary judgment is granted on Plaintiff's claim of insufficient leave for pregnancy.

## IV. ORDER

Defendant's motion for summary judgment is hereby granted in part and denied in part. Summary judgment is granted in favor of the Defendant on Plaintiff's claims of retaliation, disability via pregnancy, and insufficient leave provided for pregnancy. Summary judgment is denied as to Plaintiff's claim of pregnancy and sex discrimination.

IT IS SO ORDERED.