# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2795

_____

Larry Kells,                            *
                                        *
                                        *
          Appellant,                    *
                                        *
   vs.                                  *   Appeal from the United
                                        *   States District Court
Sinclair Buick - GMC Truck, Inc.,       *   for the Eastern District
                                        *   of Missouri.
                                        *
          Appellee.                     *
                                        *

_____

Submitted: March 13, 2000
Filed:    April 27, 2000

_____

Before McMILLIAN and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

_____

[1]The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

This is an employment discrimination case. The Plaintiff, Larry Kells charged the Defendant with discrimination on account of age and disability. The district court[2] granted the Defendant's motion for summary judgment on each count of the Plaintiff's Complaint. For the reasons set forth below, we affirm in part and reverse in part.

## I. BACKGROUND

In April 1993, Defendant Sinclair Buick-GMC Truck, Inc. ("Sinclair-Buick") acquired Art Haack Buick, where Larry Kells worked as a used car salesman. Part owner Dave Sinclair Jr. became the dealership's new manager, and in March 1994 he offered Kells the opportunity to work as a finance and insurance ("F&I") manager. Kells accepted. He joined Greg Gorham, the other F&I manager.

The F&I department was responsible for selling car buyers additional services such as financing, insurance, and extended warranties. Sometime in 1994, Dave Sinclair Jr. was contacted by General Motors Holding Division, the investment department at General Motors, which advised him that his F&I department was underperforming. General Motors Holding Division recommended that he engage an independent financing and consulting firm called Maximum Achievable Profits, Inc. ("MAP") to review the department and train the Sinclair-Buick F&I employees. Sinclair Jr. hired MAP in December 1994.

Two MAP consultants arrived, Vern Hutson and Leo Norath. They reviewed and trained Kells and his coworker, Gorham for an eight month period ending in August 1995. MAP noted problems with both Gorham's and Kells' performance, but believed that Kells exhibited a more serious attitude problem. On or about August 4,

---

[2]Hon. Lawrence O. Davis, United States Magistrate Judge in the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Sinclair Jr. removed Kells from the F&I department and reinstated him in his former position as a used car salesperson.

Subsequently, a September 8 MAP "letter of findings" from Leo Norath was issued. The letter criticized the accuracy of Kells' and Gorham's "daily logs" and made additional remarks concerning Kells' performance. During a September 17 meeting between Sinclair Jr. and MAP consultant Hutson, Sinclair Jr. expressed his concerns with regard to a possible lawsuit from Kells as well as community perceptions surrounding Kells' transfer. A second MAP "letter of findings" was generated following this meeting which described how Kells would not use procedures properly with customers, did not take a great interest in improving, and had a negative attitude. This letter contained the first written MAP recommendation that Kells be removed from his F&I position.

Kells' new supervisor was Mike Ruhland, who was also critical of Kells' abilities. Ruhland told Kells that he was "useless," "done with the business" and that he did not want Kells in the used car department because he could not wait on customers fast enough or keep up with the other Sinclair-Buick employees. Kells has muscular dystrophy and found some duties connected with his new position difficult. Ruhland denied repeated requests for a ramp into the used car building, the use of a cart, and authorization to use a canopy-covered parking space in order to accommodate Kells' disability.

Kells worked in the used car department for nearly five more months before submitting a letter of resignation in December. In the letter, Kells complained that despite his genuine dedication to Sinclair-Buick, he had been demoted "under dubious pretexes" [sic] so that his income would decline and he would be forced to resign. Following Kells' resignation, Dave Sinclair Sr., Dave Sinclair Jr.'s father and a part owner of the dealership, called Kells at home. Sinclair Sr. asked Kells how old he was.

"Fifty," Kells replied. "When you get that age, those things happen to you in our company," Sinclair Sr. responded.

In March of the following year, Kells filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR). He filed a four count Amended Complaint with the District Court for the Eastern District of Missouri, alleging wrongful demotion, harassment, and constructive discharge in violation of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and comparable provisions of the Missouri Human Rights Act (MHRA). In three separate orders, the district court granted summary judgment on all counts of Kells' Complaint.[3] This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996). Summary judgment may issue only when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Hindman v. Transkirt Corp., 145 F.3d 986, 990 (8th Cir. 1998). When the evidence would support conflicting conclusions, summary judgment should be denied. See Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991) ("All the evidence must point one way and be susceptible

---

[3]The district court ruled that Kells' MHRA claims should be dismissed because they were untimely filed. See Mo. Rev. Stat. § 213.075.1 (complaints of discrimination must be filed with the MCHR within 180 days of the alleged act of discrimination). Kells has not appealed this determination. Thus, only his federal claims are before this Court.

of no reasonable inferences sustaining the position of the nonmoving party [before summary judgment is appropriate].").

## A. ADA Claim

The Defendant does not dispute that Kells is a qualified individual with a disability within the meaning of the ADA. See 42 U.S.C. § 12102(2)(A) (defining a disability as an impairment which substantially limits a major life activity). Kells has insulin-dependent diabetes and muscular dystrophy, both recognized ADA impairments. See Torcasio v. Murray, 57 F.3d 1340, 1354 (4th Cir. 1995), cert. denied, 516 U.S. 1071, 116 S.Ct. 772, 113 L.Ed.2d 724 (1996), citing 28 C.F.R. § 35.104 (muscular dystrophy); Burroughs v. City of Springfield, 163 F.3d 505, 507 (8th Cir. 1998) (diabetes). As a result of his muscular dystrophy, Kells has diminished use of the muscles in the lower part of his body. He wears braces on both legs and walks using two canes. Despite these mitigating devices, the Defendant concedes, Kells' impairments substantially limit one or more of his major life activities, such as walking. As such, Kells has a disability.

What the parties dispute is whether Kells was demoted and ultimately constructively discharged because of his disability. See 42 U.S.C. § 12112(a) (prohibiting discrimination because of disability in regard to "the hiring, advancement, or discharge of employees"). In support of his claim, Kells points to statements by Mike Ruhland, the used car department manager, that Kells was "useless," "done with the business," and could not wait on customers fast enough or keep up with other employees. In addition, Kells cites to instances in the record which suggest that Sinclair Buick failed to provide reasonable accommodations for his disability. Kells further attempts to create a genuine issue of material fact with regard to the timing of MAP's recommendation that he be transferred out of the F&I department. Before reviewing the district court's grant of summary judgment on Kells' ADA claim, we first examine these factual issues.

### 1. Timing of MAP Recommendation

The following facts are clearly undisputed. Kells was transferred back to the used car department on August 4, 1995. On September 8, MAP issued a letter of findings which contained criticisms of Kells, as well as criticisms of Greg Gorham. On September 17, Vernon Huston met with Dave Sinclair Jr. and discussed Sinclair Jr.'s concerns about a possible lawsuit from Kells. On September 27, MAP issued a second letter of findings recommending Kells' transfer.

What is not entirely clear is whether MAP consultants orally recommended that Kells be transferred *before* Sinclair Jr. carried out Kells' transfer. Sinclair-Buick's defense theory depends, in part, upon their reliance on MAP's objective conclusions concerning Kells' professional shortcomings. Sinclair-Buick argues that its reliance on MAP's recommendation to transfer Kells out of the F&I department refutes Kells' claim that it was motivated by any sort of discriminatory animus. In support of this theory, Sinclair-Buick contends that the record plainly establishes that it received a verbal recommendation to transfer Kells prior to taking that action. The district court agreed, and found that this was the only reasonable reading of the record.

Sinclair-Buick cites to affidavits by MAP consultants Leo Norath and Vernon Hutson which it originally attached to its reply brief to Plaintiff's brief in opposition to Defendant's motion for summary judgment. In the Norath affidavit, Norath swore that he verbally advised Sinclair Jr. to remove Kells from the F&I department in approximately April of 1995, some four months before Kells was finally transferred. In the Hutson affidavit, Hutson stated that he verbally advised Sinclair Jr. to transfer Kells as early as February 1995. Because Kells could offer no evidence to contradict these assertions, the district court concluded that there was no genuine issue as to when the MAP consultants recommended Kells' transfer.

Part of the difficulty with the district court's conclusion as to this aspect of the record lies in Norath's and Hutson's prior deposition testimony. Hutson was asked about his notes of the September 17 meeting:

> A. It was one of my follow-up visits and, again, it was things we discussed so I made notes.
> Q. It goes on to state that, the very third sentence from the bottom, "We then recommended dismissal. Dave's thoughts on community standing and concern of some type of lawsuit would not permit dismissal until he had given ample warning and compile statistics to support his move and decision." That's something that, your testimony was, that you discussed in February of 1995. I'm wondering why you're writing it down on September 17th of 1995.
> A. Because it was probably September then, I discussed it then. It was five years ago.
> Q. So this refreshes your recollection that it wasn't in February, but it was September of 1995 that you made the recommendation?
> A. I wrote it on September of 1995. The actual conversation was probably then. Mr. Sinclair was very concerned about public opinion and that's why I put it in my record.

Norath was questioned about the September 27 letter which was issued following the meeting:

> Q. Okay. Do you know of any other writing other than this September 27, 1995, letter that you recommend Mr. Kells be discharged from the F&I department?
> MR. GOFFSTEIN: Are you referring just to what Mr. Norath did?
> MR. LOWE: Yes.
> MR. GOFFSTEIN: Okay.
> A. Repeat that question please.
> Q. Yeah. Do you remember any other document where you recommend Mr. Kells be changed from the F&I department –
> A. No.

7

Q. – other than this – you've got to let me finish my – other than this September 27, 1995, letter?

A. No.

Q. And sitting here today you don't have a recollection of making that recommendation to Mr. Sinclair other than in this September 27th, 1995, letter?

A. That's correct.

The court reasoned that Defendant Sinclair-Buick had offered uncontradicted evidence that it had relied on MAP's verbal recommendations in deciding to transfer Kells to the used car department. The court focused on other portions of the MAP consultants' deposition such as where Hutson testified that in roughly February 1995, he "probably" recommended Kells' termination, and Hutson's handwritten notes of the September 1995 meeting where it was recited that dismissal was recommended as early as six weeks into the MAP program.

We do not believe that the court's conclusion can be reconciled with the applicable standard for reviewing facts on a motion for summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citation omitted) (cautioning that in the context of a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). The district court's factual conclusion might have been based on a logical, well-reasoned reading of the record, but it was not the only reasonable conclusion which could have been drawn.

Hutson's and Norath's depositions did more than clarify their deposition testimony, they contradicted it. Indeed, Hutson's affidavit characterizes his prior deposition testimony as "incorrect."[4] Granting, as we must, all reasonable inferences

---

[4]Hutson explained that during his deposition, he became confused when he was shown his notes from the September 17 meeting with Sinclair Jr.

in Kells' favor, we cannot say that the record establishes whether MAP consultants recommended Kells' transfer before Sinclair-Buick acted. Instead, this is a question best left to a jury. For summary judgment purposes, the district court should have assumed that no MAP recommendation to transfer or remove Kells was articulated until after the fact.

## 2. Reasonable Accommodation Evidence

Kells also argues that an inference of unlawful discriminatory intent arises from the Defendant's repeated denials of reasonable accommodations. When he presented this evidence in resistance to Defendant's motion for summary judgment, the court disregarded the evidence as irrelevant. Kells urges us to reconsider this decision.

In addition to prohibiting discrimination on account of disability, the ADA imposes an affirmative duty on employers to provide "reasonable accommodations to the known physical or mental limitations" of their employees. 42 U.S.C. § 12112(b)(5)(A). An accommodation is simply some change or modification in the work environment which allows an individual with a disability to participate on an equal footing with non-disabled employees. 29 C.F.R. § 1630.2(o)(1)(iii). Reasonable accommodations might include special training, restructured work schedules, or modifications of workplace equipment and devices. 42 U.S.C. § 12111(9)(B); see, e.g., Valentine v. American Home Shield Corp., 939 F.Supp. 1376, 1399 (N.D. Iowa 1996) (listing part-time employment as a potential reasonable accommodation). Proposed accommodations which would involve significant expense or difficulties upon the employer's operation of its business constitute an "undue hardship" and need not be implemented. 42 U.S.C. §§ 12112(b)(5)(A), 12111(10).

Kells cites to three instances where he was allegedly denied a reasonable accommodation by Sinclair-Buick. First, he claims, the Defendant refused to allow him to park his vehicle in a covered parking spot during bad weather. Because the parking lot was positioned on an incline, Kells' disability made it difficult to maneuver when

9

the surface was wet or icy. Sales manager Mike Ruhland denied this request on ten or more separate occasions. Second, Kells requested that a ramp be built to assist him in climbing the stairs into the used car building following his transfer. Although Sinclair Buick apparently made preliminary efforts to construct a ramp, it did not do so until the time of Kells' resignation in December 1995. Third, Kells repeatedly requested the use of an electric cart which was kept at the dealership in order to go from the used car building to the main building. Plaintiff needed to carry as many as ten or twelve files across the uneven asphalt on a daily basis. On at least one occasion, Kells fell while making this trip. Ruhland refused to permit Kells to use the cart because it reserved the cart's use for customers, saying, "It's not my concern. Just get [the files] down there. It's your responsibility. Just take care of it."

Kells presents a rather novel theory. Rather than stating a claim directly for these purported denials of reasonable accommodations, he asked the district court to consider the denials as evidence supporting his claim that his demotion and termination were motivated by discriminatory animus. See Tart v. Behan Lumber Co., 31 F.3d 668, 673 (8th Cir. 1994) (noting that evidence of background incidents showing biased climate can be indicative of motive or attitude of discrimination). The Defendant characterizes Kells' assertion as a red herring because all the events occurred after Kells' demotion to used car salesman. Kells admitted that he made no requests for reasonable accommodations while in the F&I department because he did not need any accommodations in that position. Because the alleged denials of reasonable accommodations did not occur before or contemporaneously with his demotion, the Defendant claims, they shed no light on the reason for Kells' demotion.

We disagree. Kells claims that the demotion as well as the purported constructive termination were motivated by his disability. He has clearly presented prima facie evidence of the Defendant's repeated denials of requests for reasonable accommodations. If it is accepted that the Defendant conducted itself with a disregard for its obligations to Kells under federal disability laws, this is relevant evidence of the

10

Defendant's attitude towards Kells' disability. <u>Cf.</u> 42 U.S.C. § 12112(b)(5)(B) (including within the definition of discrimination under the ADA, the denial of employment opportunities "if such denial is based on the need of [the] covered entity to make reasonable accommodation"). From the evidence presented, a reasonable jury could find that Sinclair-Buick viewed with derision Kells' requests for reasonable accommodations and from that infer that Sinclair-Buick's reasons for transferring and discharging Kells were also related to contempt towards his disability. Failing to provide an employee with reasonable accommodations can tend to prove that the employer also acted adversely against the employee because of the individual's disability. We therefore reject the district court's conclusion that such evidence is simply irrelevant. <u>See</u> F.R.E. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

The district court also disregarded Plaintiff's evidence of verbal harassment by Mike Ruhland, Plaintiff's supervisor in the used car department. We likewise reject the court's conclusion that this evidence has no bearing on Plaintiff's claim. Criticisms of Kells' slugishness in attending to customers could be read as directed towards the fact that Kells mobility is restricted due to his disability. The court erred in failing to consider this evidence in the context of Defendant's motion.

### 3. Summary Judgment

Having reviewed the record, we have concluded that the district court erred in disregarding the evidence of reasonable accommodation denials and in holding that no genuine issue existed regarding the timing of the MAP recommendation to transfer Kells. It still remains for us to determine whether we should nonetheless affirm the district court's grant of summary judgment on Kells' ADA claim. Summary judgment is an appropriate remedy despite factual discrepancies unless genuine issues of *material*

11

fact remain. Fed. R. Civ. P. 56 (emphasis added). The evidence in support of Kells' claim that he was demoted and constructively discharged because of his disability, viewed in a light most favorable to him, can be summarized as follows: insensitive comments by supervisor Ruhland in connection with Kells' physical limitations, repeated denials of reasonable accommodation requests, Kells being replaced by a non-disabled worker, and an inference that the MAP recommendation may have been manufactured post-hoc to support a non-discriminatory explanation for Kells' demotion. Granting Kells all reasonable inferences from these facts, we conclude that a genuine issue has been presented as to whether the Defendant's actions were motivated by the existence of Kells' disability. We will reverse the district court's grant of summary judgment on this claim.

## B. ADEA Claim

Kells was fifty years old during the time frame at issue. He asserted in count II of his Complaint that he was demoted because of his age. See 29 U.S.C. §§ 623(a)(1), 631(a) (prohibiting employment discrimination against any individual over the age of forty "because of such individual's age"). In support of this claim, Kells relies on the fact that after his demotion he was replaced by a 37-year-old individual, the subsequent criticisms by Mike Ruhland, and a comment by Dave Sinclair Sr. during a telephone conversation with Kells.

After Kells resigned in December 1995, Dave Sinclair Sr. called Kells at his home. Sinclair Sr. was not directly involved with the dealership's management, although his ownership interest is forty-nine percent. Kells complained to Sinclair Sr. that he felt he had been mistreated by Sinclair Jr. and Mike Ruhland. Sinclair Sr. asked

Kells how old he was. "Fifty," Kells replied. "When you get that age, those things happen to you in our company," Sinclair Sr. observed.[5]

Kells argues at some length that Dave Sinclair Sr.'s telephonic comment presents direct evidence of age-related discriminatory animus. See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus. See, e.g., Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (holding that a statement by a company president who actively participated in the personnel decision at issue that "older employees have problems adapting to changes and to new policies" constitutes direct evidence). The Sinclair comment is not direct evidence because it presents no such link. No evidence was presented that Sinclair Sr. "actively participated in the personnel decisions at issue." Id. Moreover, Kells presented no evidence that Sinclair Sr. was basing his comment on any direct observations of Sinclair-Buick's practices, policies or attitudes concerning older employees. The court was correct in applying an indirect evidence framework to Kells' ADEA claim.

McDonnell Douglas provides a framework for analyzing employment discrimination charges which rely on inferential proof. McDonnell Dougas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thus, utilizing this familiar and often useful three-part burden-shifting scheme, we are persuaded that Kells has presented a prima facie case of age discrimination. In response, Sinclair-Buick has articulated a non-discriminatory explanation for its actions; Kells' mistakes, his bleak attitude and lackluster performance. Under the third prong of McDonnell Douglas, the

---

[5]Kells' deposition testimony was that Sinclair Sr. said, "You know, when you start getting in the age you're in, those things happen." Subsequently, in an affidavit, Kells modified this to include the phrase "those things happen in our company." For purposes of reviewing the district court's summary judgment ruling, we assume that Kells inadvertently misquoted Sinclair Sr. and corrected his error by affidavit.

burden of production then shifts back to Kells to show that his employer's explanation is pretextual and that age was a determinative factor in Sinclair-Buick's decision to demote him. Id., 411 U.S. at 804-05, 93 S.Ct. at 1825-26; Rothmeier, supra, 85 F.3d at 1336-37.

The Defendant argues that Kells' claim is substantially weakened by the fact that he was already over the age of forty when Sinclair Jr. promoted him seventeen months earlier. Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir. 1992) (holding that age discrimination was not shown where the plaintiff was hired by the same person who shortly thereafter terminated him and where the plaintiff was in the protected age group at the time he was hired). The holding of Lowe is limited to cases where no evidence of overt discrimination has been presented. Madel, 116 F.3d at 1253. Here, the Sinclair Sr. statement and other circumstances are inferential proof of overt discrimination, which, coupled with the suspicions timing of the MAP recommendation, raise an inference of illegal discrimination.

We therefore hold that, viewing the record in its entirety, Kells has presented a triable issue of fact with regard to his ADEA claim. The Sinclair Sr. observation, coupled with Kells' other evidence, is sufficient to present a jury with Kells' claim of age discrimination. We will reverse the district court's grant of summary judgment on Kells' ADEA claim.

## C. Harassment

Finally, Kells appeals the district court's grant of summary judgment on Kells' claims of harassment. Kells' Complaint alleges that the Defendant wilfully subjected him to harassment on account of disability and age. The court dismissed these aspects of the Plaintiff's Complaint after concluding that Kells had failed to exhaust his administrative remedies. The court reasoned that because Kells had not specifically raised an allegation of harassment in his charge of discrimination filed with the EEOC-

14

MCHR, and because the allegations Kells did raise were not "like or reasonably related to" a harassment charge, that the Plaintiff was limited to claims of wrongful demotion and constructive termination. We review this ruling de novo. Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998) (citation omitted).

In the charge Kells submitted to the EEOC, he claimed that he had been removed from his F&I position because of his disability and that the Defendant's "actions were taken in an effort to force me to resign."[6] Kells argues that his failure to specifically reference harassment "should not sound the death knell" for his allegations. Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996). A harassment claim "reasonably can be expected to grow out of" an investigation into the substance of his assertion that the Defendant forced his resignation, Kells avers. EEOC v. Delight Wholesale Co., 973 F.2d 664, 668 (8th Cir. 1992).

"In determining whether an alleged discriminatory act falls within the scope of a [discrimination] claim, the administrative complaint must be construed liberally 'in

---

[6]Kells' charge read in full:

I. On August 4, 1995, I was removed from my position as Finance Manager, and was given a "choice" of either resigning or accepting a straight commission position as a used car salesperson. I had been performing satisfactorily in the Finance Manager position but I was viewed as a liability because of my disability and my worsening physical condition.

II. I was not given a valid reason for the removal and demotion. Management was aware of my disability and worsening physical condition which would make it almost impossible for me to support myself as a used car salesman. I believe their actions were taken in an effort to force me to resign.

III. I believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act.

IV. I was also replaced by a younger, non-disabled man.

15

order not to frustrate the remedial purposes of [the ADA and the ADEA]' and the plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Nichols, 154 F.3d at 886-87 (citations and internal citation omitted). "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (citation omitted). Allegations outside the scope of the EEOC charge, however, circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (citation omitted).

We agree with the district court that Kells' claim that he was unlawfully subject to verbal harassment by Mike Ruhland is not reasonably related to his claims of discriminatory demotion and termination at the hands of Sinclair Jr. The EEOC charge failed to put the Defendant on notice that Kells was claiming he was subject to harassment. Even granting Kells' pro se EEOC charge a liberal construction, we are prohibited from "inventing *ex nihilo*, a claim which simply was not made." Shannon, 72 F.3d at 685; see also Tart, 31 F.3d at 673 (claim of racial harassment is not reasonably related to racially discriminatory discharge); Williams, 21 F.3d at 223 (claim of race discrimination separate and distinct from claim of retaliation three years later). We will therefore affirm the district court's ruling that Kells failed to exhaust his administrative remedies with regard to his harassment claims.

## III. CONCLUSION

For the foregoing reasons, we *reverse* the district court's grant of summary judgment on Kells' ADA and ADEA claims. We *affirm* with respect to the court's dismissal of Kells' harassment claims and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.