# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2257

_____

Karen Duncan,                                    *
                                                 *
        Plaintiff - Appellant,                   *   Appeal from the United States
                                                 *   District Court for the
v.                                               *   Eastern District of Arkansas.
                                                 *
Delta Consolidated Industries, Inc.              *
                                                 *
        Defendant - Appellee.                    *

_____

Submitted:  December 15, 2003
     Filed:  June 25, 2004

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

In this appeal, the plaintiff-appellant, Karen Duncan, challenges the district court's entry of summary judgment in favor of her employer, Delta Consolidated Industries, Inc. In her Title VII suit, Ms. Duncan claims that she was sexually harassed and retaliated against for complaining about the harassment. The district court[1] found that she had failed to exhaust her administrative remedies on her sexual harassment claim and that she failed to establish a prima facie case of retaliation. We affirm.

_____

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

# I. FACTUAL BACKGROUND[2]

Ms. Duncan began working for Delta in June of 2000. Delta manufactures tool boxes, and Ms. Duncan, although on disability leave, is employed as a turret operator. During the relevant time period, she worked alongside fellow turret operator, Kelly Ring. Her team leader was Jerry Prunty. Mr. Prunty assigned work to the turret operators but had no authority to discipline, hire, or fire Delta employees. Shortly after Ms. Duncan began working second shift, Mr. Prunty began harassing her. He directed lewd, vulgar language toward Ms. Duncan and inappropriately touched her. In late March 2001, Mr. Prunty pinned Ms. Duncan against her turret machine and touched her genitalia. She did not complain to Delta management or the human resources department about this incident or about Mr. Prunty's previous conduct until April 5, 2001. Delta immediately suspended Mr. Prunty pending the results of an investigation into Ms. Duncan's complaint. Mr. Ring corroborated her allegations, and Delta terminated Mr. Prunty's employment on April 9, 2001.

Ms. Duncan alleges that Delta retaliated against her for complaining about Mr. Prunty's churlish conduct, which resulted in his termination. According to Ms. Duncan, the most egregious retaliatory conduct consisted of assigning her more difficult and physically-demanding work. Namely, she contends that, prior to her sexual harassment complaint, she worked with parts that weighed up to thirty-five pounds. After she lodged the complaint, she asserts that she was assigned parts that weighed upwards of sixty pounds and were, in fact, too large for her machine. As a result of the heavier work, Ms. Duncan sustained serious injuries that required surgery. At the time of the hearing on Delta's summary judgment motion, Ms. Duncan had been released to return to work but was receiving short-term disability

---

[2]Pursuant to Federal Rule of Civil Procedure 56(c), we recite these facts in the light most favorable to Ms. Duncan as the non-moving party. See, e.g., Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000) (construing the record in the light most favorable to the non-moving party).

benefits because her medical restrictions precluded her from returning to her turret operator position.

Assigning her heavier work is not the only retaliatory conduct that Ms. Duncan alleges resulted from her complaint against Mr. Prunty. In addition, she alleges that the second shift turret operators' work schedule was changed because of her complaint. She attempts to portray this action as retaliatory because Delta management knew that she had previously voiced objection to a proposed schedule change. She contends, moreover, that she was given "points" for tardiness and absenteeism in retaliation for her complaint but admits that Delta ultimately removed these points from her record once they were brought to Delta's attention. Finally, Ms. Duncan asserts that Mr. Ring has also been retaliated against for testifying on her behalf during the investigation of these claims.

## II. PROCEDURAL HISTORY

Ms. Duncan filed a discrimination charge with the EEOC on September 4, 2001. The standard EEOC charge form instructs complainants to check the appropriate box or boxes for the cause of discrimination alleged. Ms. Duncan checked the box for "retaliation." In the space provided for "particulars," Ms. Duncan described the complained-of conduct:

> I have been employed with the above named company since June 2000. In October 2000 I became a Turret Operator on second shift. On April 5, 2001 I reported my supervisor for sexual harassment. An investigation was conducted and the supervisor was terminated. Since reporting the sexual harassment I have been subjected to different terms and conditions of employment in that I am being deined [sic] personal time and given points each time I miss, which has resulted in me acquiring 3 ½ points with only a ½ point left before termination. I have also been harassed and intimidated by the Night Shift Aluminum Supervisor, who was friends with the supervisor that was fired, in that

-3-

he has taken over my time card and monitors my every movement. He also has given me the most difficult tasks to complete.

I have been given no reason why I am not allowed to use my personal time or why I am being harassed and intimidated.

I believe that I am being subjected to different terms and conditions of employment in that I am being denied personal time, harassed and intimidated in retaliation for complaining of sexual harassment in violation of Title VII of the Civil Rights Act of 1994 [sic], as amended.

Ms. Duncan received a right-to-sue letter and filed a lawsuit in federal district court on March 22, 2002, alleging both retaliation and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. In response, Delta filed a motion for summary judgment in which it argued that Ms. Duncan was precluded from pursuing a sexual harassment claim because she failed to exhaust her administrative remedies; that she unreasonably failed to avail herself of Delta's sexual harassment policy; that she failed to prove she suffered an adverse employment action; and that she failed to show a causal connection between her protected conduct and the alleged adverse actions. The district court granted Delta's motion on the ground that Ms. Duncan did not exhaust her sexual harassment claim and that she failed to show that she suffered a tangible employment action.

## III. DISCUSSION

We review a district court's dismissal on summary judgment de novo. See Shempert v. Harwick Chem. Corp., 151 F.3d 793, 795 (8th Cir. 1998). "We apply the same standard as the district court and determine whether the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Tademe v. Saint Cloud State Univ., 328 F.3d 982, 986-87 (8th Cir. 2003) (quotation omitted); Fed. R. Civ. P. 56(c). The summary judgment standard requires us to view the evidence in the light most favorable to the non-

-4-

moving party and draw all reasonable inferences in her favor, mindful that "[s]ummary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim." Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999).

1.      Sexual harassment claim

"In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)). Title VII requires claimants to timely file a discrimination charge with the EEOC before he or she may bring a Title VII action in court. 42 U.S.C. § 2000e-5(e)(1). It is generally recognized that "'[e]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)); see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982) ("By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer."). "The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim . . . ." Shannon, 72 F.3d at 684.

We do not require that subsequently-filed lawsuits mirror the administrative charges. See Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998) ("A

Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, but the scope of the subsequent action is not necessarily limited to the specific allegations in the charge."). However, "the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (quoting Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985)). "Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000); accord Watson v. O'Neill, 365 F.3d 609, 614 (8th Cir. 2004) ("As in *Williams*, Watson's failure to make an assertion of retaliatory motive in relation to his non-selection as a Building Manager Specialist is fatal to his attempt to resurrect the issue."); Williams, 21 F.3d at 223 ("'Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" (quoting Babrocky v. Jewel Food Co. & Retail Meatcutters, 773 F.2d 857, 863 (7th Cir. 1985))).

In this case, it is undisputed that Ms. Duncan did not check the "sex" box on her EEOC complaint form. Delta argues that her sexual harassment claim, therefore, is outside the scope of the administrative charge and thus cannot be litigated in this action. Ms. Duncan counters that the harassment claim is like or reasonably related to the substance of her retaliation allegations in the administrative charge. We, however, do not agree.

We are mindful that Ms. Duncan filed her EEOC charge *pro se*. "[C]ourts should not use Title VII's administrative procedures as a trap for unwary *pro se* civil-rights plaintiffs. . . . We . . . , therefore, when appropriate, construe civil-rights and discrimination claims charitably." Shannon, 72 F.3d at 685; accord Cobb, 850 F.2d

at 359 (noting that discrimination complainants oftentimes file EEOC charges without legal assistance and observing that courts must "interpret[] [administrative charges] with the utmost liberality in order not to frustrate the remedial purposes of Title VII."). Even so, "there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." Shannon, 72 F.3d at 685 (internal citation omitted).

It is well-settled that charges of sexual harassment generally are not like or reasonably related to retaliation charges for complaining about antecedent harassment. See Wallin v. Minn. Dep't of Corrs., 153 F.3d 681, 688 (8th Cir. 1998) ("[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims."). Like the district court, we think Ms. Duncan's case is controlled by Williams v. Little Rock Municipal Water Works. In Williams, the African-American plaintiff alleged in her EEOC charge that she had been denied a promotion and a merit raise in retaliation for having filed an EEOC charge three years earlier. 21 F.3d at 221. Her Title VII judicial complaint, however, alleged retaliation *and* race discrimination. Id. The district court granted summary judgment on the discrimination claims, because the plaintiff had failed to exhaust her administrative remedies on that claim. Id. at 222-23.

We affirmed, because the race discrimination claim was "separate and distinct from [the plaintiff's] claims of retaliation." Id. at 223. We noted that the particulars of her EEOC complaint were clear and "specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987." Id. The plaintiff mentioned her unexhausted discrimination claim as a basis for the retaliation, but this reference to her previous complaint was not enough to exhaust the discrimination claim. Id.

This reasoning dictates the same result in Ms. Duncan's case. The particulars of her EEOC complaint make clear that she was alleging retaliation for having

complained about sexual harassment. She stated, "I am being denied personal time, harassed and intimidated in retaliation for complaining of sexual harassment . . . ." She did not provide any details concerning any ongoing harassment, and the reference to past harassment is simply insufficient to put the EEOC or Delta on notice of the charge. Ms. Duncan, therefore, did not exhaust her sexual discrimination claim, and the district court properly entered summary judgment in favor of Delta on that claim.

2.    Retaliation

Having concluded that summary judgment was properly entered on Ms. Duncan's harassment claim, we turn now to her argument that the district court also erred in entering summary judgment on her retaliation claim. The district court found that Ms. Duncan failed to generate a genuine issue of material fact as to whether she was subjected to an "adverse employment action." The court found, therefore, that she did not establish a prima facie case of retaliation. We agree with the district court that Ms. Duncan failed to establish any adverse employment action and further find that her allegations of adverse employment actions fail for causation.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that he or she was subjected to an adverse employment action that was causally related to his or her protected activity. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001). We have explained,

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, *see Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities

do not, *see Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

Spears v. Mo. Dep't of Corrs. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000); accord Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 868 (8th Cir. 2003) ("Certain employment actions cannot be characterized as adverse. Such actions include changes in the terms, duties, or working conditions that cause no materially significant disadvantage to the employee . . . or disappointment with changes in one's employment situation.") (internal citations and quotations omitted) (omission in original).

Ms. Duncan has not identified any "tangible change in working conditions that produce[d] a material employment disadvantage." See Spears, 210 F.3d at 853. It is undisputed that Ms. Duncan remained in her turret operator position with the same pay and benefits after complaining about Mr. Prunty's conduct. Her work schedule was changed, but so were all the other turret operators' work schedules. The schedule change Ms. Duncan complains about amounts to nothing more than a "disappointment with changes in one's employment situation," Saulsberry, 318 F.3d at 868, and cannot be characterized as "adverse" for purposes of Title VII. Moreover, Ms. Duncan admits that Delta had contemplated this schedule change before she complained about Mr. Prunty and that she was the only one opposed to it; therefore, it is difficult to agree with her contention that the change was causally connected to her complaint.

Ms. Duncan's main point of contention on appeal is that she was assigned heavier parts to run on her machine after she complained about Mr. Prunty. The evidence shows that all turret operators were required to run heavy parts, and Ms. Duncan was allowed to swap work when parts were too heavy or could not be run through her machine. We cannot agree that being required to do her job constitutes an adverse employment action. Nevertheless, giving Ms. Duncan the benefit of all

reasonable inferences and assuming it was an adverse action, a reasonable jury could not find that the heavier work assignments were causally connected to her protected activity. Her own witness, Mr. Ring, testified that Delta continued to run the larger parts even after Ms. Duncan went on disability leave. In addition, the first shift turret operator who runs the same machine as Ms. Duncan stated by way of affidavit that running heavy parts was just part of the job.

We have considered all of Ms. Duncan's arguments in support of her retaliation claim but, in short, must agree with the district court's conclusion that Ms. Duncan's complaints amount to no more than "perceived slights." See Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999) (noting parenthetically that "plaintiff must show more than occasional unkind words, snubs and perceived slights by defendant's agents to prove adverse employment action") (citation omitted). Further, she has failed to offer any admissible evidence from which a reasonable jury could conclude that the complained-of retaliatory conduct was connected to her complaint about Mr. Prunty.

Accordingly, we affirm the judgment of the district court.

_____