**Melissa GRAHAM, Plaintiff**

v.

**BRYCE CORPORATION, DEFENDANT.**

No. 4:04CV00185 JLH.

United States District Court, E.D. Arkansas.

Dec. 15, 2004.

Stephen E. Fisher, Fisher Law Firm, Little Rock, AR, for Plaintiff.

### OPINION AND ORDER

HOLMES, District Judge.

Melissa Graham filed this action against her former employer, Bryce Corporation, bringing various constitutional claims pursuant to the First and Fourteenth Amendments and 42 U.S.C. § 1983, racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as state law claims of intentional infliction of emotional distress, intentional interference with contractual rights or business relationship, and slander. Bryce has moved to dismiss the complaint in its entirety (Docket # 11). Graham responded to Bryce's motion, but also filed a separate motion to dismiss her constitutional claims pursuant to Fed.R.Civ.P. 41 (Docket # 16). Bryce does not object to Graham's motion, so that motion is hereby granted. The constitutional claims brought pursuant to the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983 are dismissed with prejudice. Regarding the remaining claims in Graham's complaint, Bryce's motion will be granted in part and denied in part for the reasons stated herein.

A Rule 12(b)(6) motion to dismiss can be granted only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Schmedding v. Tnemec Co., Inc.,* 187 F.3d 862, 864 (8th Cir.1999). "[A]s a practical matter, dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824, 829 (8th Cir.2003) (quoting *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997)). For purposes of a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and must accept the allegations in the complaint as true. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994).

Graham, an African–American woman, was employed by Bryce for approximately one and a half years before she was terminated on March 20, 2003. During her employment, she spoke out against alleged

racial inequalities existing at Bryce. In November 2002, when Graham notified the Human Resources Manager and her supervisor that her spouse's grandmother had died, she was informed that she was eligible to receive three days bereavement leave with pay. On March 19, 2003, the Human Resources office informed Graham that she had not been entitled to bereavement leave. The office requested that she repay the money she had previously received. After Graham agreed, she was informed that the Human Resources would "check on something and get back to her." Two days later, Graham was terminated for falsifying funeral leave.

## I. Title VII Claims

■ Graham filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 3, 2003, claiming race discrimination in violation of Title VII. She received from the EEOC a right-to-sue letter on December 5, 2003, and filed her complaint in this Court on March 4, 2004, including among her claims race discrimination and retaliation claims under Title VII. Bryce makes two arguments for dismissal of the Title VII claims. First, Bryce urges this Court to dismiss these claims because Graham failed to file them within 90 days of receipt of a notice of the right to sue, as required by 42 U.S.C. § 2000e–5(f)(1). According to Bryce, the action was filed on the 91st day after receipt of the right-to-sue letter and thus should be dismissed. By calculation of the dates by this Court, the action was filed on the 90th day and thus is not untimely. Bryce contends that the day the letter was received should be counted in computing the 90–day period of limitations, citing *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir.1989), and *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Neither case so states. The statute provides, "within ninety days after the giving of such notice a civil action may be brought. . . ." 42 U.S.C. § 2000e–5(f)(1). On Bryce's theory, if the statute said that an action may be brought within one day after giving of notice, the action would be due on the day the notice was given. The 90–day period begins to run on the day the notice is received, as *Hill* says, but the day notice is received is not one day after receipt of notice, which it would have to be on Bryce's theory.

■ Second, Bryce argues that Graham's claim of retaliation should be dismissed because Graham failed to exhaust her administrative remedies with regards to this claim. "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994). Exhaustion of administrative remedies under Title VII requires a claimant to give notice of all claims of discrimination in the initial administrative charge. *Stuart v. General Motors Corp.*, 217 F.3d 621, 630–31 (8th Cir.2000). While the Eighth Circuit has stated that a subsequently filed lawsuit need not mirror the administrative charge claim for claim, the complaint can only sweep as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir.2004). Put another way, "[a] plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams*, 21 F.3d at 222. Allegations outside of this scope circumvent the investiga-

tive and conciliatory EEOC process and deprive the charged party of notice of the charge. *Duncan,* 371 F.3d at 1025. *See also Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir.2000).

In *Williams,* the Eighth Circuit upheld summary judgment in favor of the defendants as to a plaintiff's race discrimination claim where the plaintiff, filing as a pro se claimant, alleged only in her EEOC charge that she had been denied a promotion and a merit raise for retaliatory reasons and subsequently brought a judicial complaint claiming both retaliation and race discrimination. *Williams,* 21 F.3d at 222. The Eighth Circuit stated that the race discrimination claims were "separate and distinct from her claims of retaliation." *Id.* at 223. It went on to examine the charge in more detail:

> Not only did Williams fail to check the box for race discrimination, her 1990 EEOC charge and supporting affidavit specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987. The 1990 EEOC charge does not even hint of a claim of race discrimination. This amounts to more than a mere technicality and is the product of an unconstrained reading of Williams' charge. The only claim properly addressed by EEOC administrative processes was that of retaliation. Therefore, we hold that the district court did not err in granting Water Works' motion for summary judgment as to Williams' Title VII race discrimination claims.

*Id.*

In *Wallin v. Minnesota Dept. of Corrections,* 153 F.3d 681, 688–89 (8th Cir.1998), the plaintiff filed a charge of discrimination with the EEOC claiming disability discrimination, but he later brought suit under various theories, including retaliation. In discussing his Title VII retalia-

tion claim, the Eighth Circuit stated, "it is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Id.* at 688. The court held that the retaliation claim would not be considered unless it "grew out of the discrimination charge he filed with the EEOC." *Id.* (quoting *Wentz v. Maryland Cas. Co.,* 869 F.2d 1153, 1154 (8th Cir. 1989)).

In the EEOC Charge of Discrimination, Graham checked only the box marked "Race" in response to the inquiry regarding the basis under which she was bringing the charge. It is undisputed that she failed to check the box marked "Retaliation" or to allege any facts that would give notice of this claim. Graham typed the facts of her case, summarily stating at the bottom of the charge that "I believe I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." Nothing in the charge put the EEOC or Bryce on notice that she would later bring a claim for retaliation on any set of facts. As instructed by *Williams* and *Wallin* then, this Court cannot consider this claim unless it grew out of the filed charge or was otherwise related to it. Here, Graham alleges in her complaint that her termination was in retaliation "for speaking out about matters of public concern and due to her race." Even if such retaliatory conduct was in violation of Title VII, it did not grow of Graham's EEOC charge. As in *Wallin,* the alleged retaliation occurred at the same time as the alleged racial discrimination that formed the basis of her EEOC charge. Because she failed to raise this claim in her charge, this Court lacks jurisdiction to hear it now.

Graham urges the Court to consider that she was proceeding *pro se* at the time she filed her charge with the EEOC and that she lacked knowledge that other

claims would be foreclosed. The Court is mindful of this fact and construes her claims liberally. *Duncan,* 371 F.3d at 1025. Even so, "there is a difference between liberally reading a claim which 'lacks specificity' and inventing, *ex nihilo,* a claim which simply was not made." *Id.* (quoting *Shannon v. Ford Motor Co.,* 72 F.3d 678, 685 (8th Cir.1996)). Graham also argues that Bryce has suffered no actual harm if the retaliation claim stands because it "surely knew" that it was probable that other claims would be brought. This argument ignores the very purpose of the exhaustion requirement as expounded in *Williams* and its progeny.

For these reasons, the Court grants Bryce's motion to dismiss Graham's Title VII retaliation claim but denies it with regard to her claim for racial discrimination. The retaliation claim is hereby dismissed without prejudice.

## II. State Claims

### A. Slander

In her complaint, Graham brings a claim for slander, claiming that "although plaintiff has consistently proven to be highly capable at her job, she has been ... subjected to demeaning and slanderous remarks, has suffered humiliation, degradation, and extreme mental anguish at the hands of her supervisors." Bryce seeks dismissal of Graham's defamation claim for failure to plead the elements of this tort in her complaint. In order to sustain a cause of action for defamation under Arkansas law, a plaintiff must prove "(1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941, 955–56, 69 S.W.3d 393, 402 (2002). The Eighth Circuit has stated that "unless the complaints set forth the alleged defamatory statements and identify the persons to whom they were published, [the defendant] is unable 'to form responsive pleadings.'" *Freeman v. Bechtel Constr. Co.,* 87 F.3d 1029, 1031 (8th Cir.1996) (quoting *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 699 (8th Cir.1979)). It has also been held that "[i]n an action for slander or libel the words alleged to be defamatory must be pleaded and proved." *Holliday v. Great Atlantic & Pacific Tea Co.,* 256 F.2d 297, 302 (8th Cir.1958).

Here, Graham fails to allege with any specificity the slander that Bryce allegedly committed. She refers only to "demeaning and slanderous remarks." She does not allege who made and published the remarks, to whom they were published, or what was said. Without these facts, Bryce cannot defend itself by forming a responsive pleading, nor can this Court say that Graham has adequately stated a claim upon which relief can be granted. Because of the vagueness of the complaint and the failure to properly state a claim, this Court could dismiss under Rule 12(b)(6). However, since Bryce argues in the alternative that the Court may treat its motion as a motion for a more definite statement, the Court will do so. Graham's claim for slander will be dismissed without prejudice unless she amends her complaint and provides this Court with a more definite statement as to the grounds constituting slander within 30 days of this order.

### B. Intentional Infliction Of Emotional Distress

Graham brings a claim of intentional infliction of emotional distress, or "outrage," by which it is commonly known in Arkansas. Bryce argues that this claim should be dismissed because Graham has failed to allege facts necessary to sustain

that action. In order to sustain an action for outrage, a plaintiff must prove four elements:

(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Crockett v. Essex,* 341 Ark. 558, 563–564, 19 S.W.3d 585, 589 (2000). This cause of action was first recognized in an employment setting in *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980). The standard that a plaintiff must meet in order to satisfy the elements of outrage in Arkansas "is an exceptionally high one." *Kelley v. Georgia–Pacific Corp.,* 300 F.3d 910, 912 (8th Cir.2002). In the employment context the standard is even higher. *Id.* (citing *Palmer v. Arkansas Council on Econ. Educ.,* 344 Ark. 461, 40 S.W.3d 784 (2001)); *Faulkner,* 347 Ark. at 958, 69 S.W.3d at 404; *Freeman,* 87 F.3d at 1031. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Counce,* 268 Ark. at 280, 596 S.W.2d at 687.

 A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Holden Farms, Inc. v. Hog Slat, Inc.,* 347 F.3d 1055, 1059 (8th Cir.2003). The Federal Rules of Civil Procedure require only notice pleading, not the more stringent "fact-pleading" requirements of Arkansas state court. *Romine v. Acxiom Corp.,* 296 F.3d 701, 711 (8th Cir.2002); *Okruhlik v. Univ. of Arkansas ex rel. May,* 255 F.3d 615, 627 (8th Cir.2001). Graham alleges that she exhibited an excellent ability to perform her duties at Bryce during the year and a half that she worked there. During this time, she alleges that she had been "ridiculed, belittled, subjected to demeaning and slanderous remarks, has suffered humiliation, degradation, and extreme mental anguish at the hands of her supervisors." She also alleges that she was "harassed, ridiculed and demeaned by defendants as reprisal for speaking out about matters of public concern and because of her race." She states that her supervisors' actions were "motivated by a desire to inflict emotional distress" on Graham. It does not appear beyond a doubt that Graham can prove no set of facts which would entitle her to relief. Therefore, Bryce's motion to dismiss will be denied as to the outrage claim. When the Court reaches the merits of the claim, it will be necessary to determine whether the alleged conduct meets this high level of outrageousness. *Smith v. Am. Greetings Corp.,* 304 Ark. 596, 601, 804 S.W.2d 683, 686 (1991). That issue, however, can be addressed in a motion for summary judgment or at trial.

**C. Intentional Interference With Contractual Rights**

 Finally, Graham brings a claim of intentional interference with contractual rights or business relationship against Bryce. Bryce argues that Graham cannot sustain this cause of action because she was an at-will employee during her employment with Bryce. Additionally, it argues that even if there was a contract between Bryce and Graham, Bryce was a party to the contract and thus cannot interfere with its own contract and be held liable.

In Arkansas, tortious interference with the contractual rights and relationships of another is actionable. *Palmer v. Arkansas Council on Econ. Educ.*, 344 Ark. 461, 472, 40 S.W.3d 784, 791 (2001). A plaintiff must establish "(1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the third party; (3) intentional and improper interference by that third party inducing or causing a breach or termination of the relationship; and (4) resulting damage to the plaintiff." *Id.* at 473, 40 S.W.3d at 791. "An action for tortious interference with a contractual relationship is based upon a defendant's conduct *toward a third party*." *Palmer*, 344 Ark. at 473, 40 S.W.3d at 791 (emphasis added). Graham alleges that her supervisors conspired with themselves and others to interfere with her employment rights at Bryce. For purposes of this lawsuit, her supervisors are employees of Bryce, not third parties. *See id.* Graham brings this claim only against Bryce, itself. It appears beyond a reasonable doubt to this Court that Graham can prove no set of facts which would entitle her to relief on this claim. This Court hereby dismisses the claim of interference with contractual rights without prejudice.

### III. Service

Lastly, Bryce claims that Graham failed to perfect service upon Bryce within 120 days of filing the complaint and for that reason her complaint should be dismissed. A review of the Court's docket reveals that the summons was issued as to the defendant on September 3, 2004, and that Graham requested several extensions of time in which to serve the complaint on defendant, all of which were granted by this Court. Dismissal based on untimeliness of service is not proper.

### CONCLUSION

For the reasons stated above, Graham's motion to dismiss the constitutional claims (Docket # 16) is hereby GRANTED. Bryce's motion to dismiss (Docket # 11) is GRANTED as to the Title VII retaliation claim and the claim for intentional interference with contractual rights or business expectancy. Bryce's motion in the alternative for a more definite statement is GRANTED as to the slander claim. Bryce's motion is DENIED as to the Title VII race discrimination claim and the outrage claim.